UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John Chinnici,              :
        Plaintiff,          :
                            :
        v.                  :    File No. 1:07-CV-229
                            :
John Edwards, Robert        :
Hofmann, Officer Christian  :
Noll,                       :
        Defendants.         :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 17, 19 and 21)

Plaintiff John Chinnici, a federal pre-trial detainee proceeding *pro se*, brings this action claiming that he was assaulted and touched in a sexual manner by defendant Christian Noll.  Noll was formerly a Correctional Officer at the Chittenden County Regional Correctional facility ("CCRC").  United States Marshal John Edwards and Vermont Department of Corrections Commissioner Robert Hofmann are also named as defendants.

The defendants have each moved to dismiss.  Their motions are unopposed.  For the reasons set forth below, I recommend that the motions to dismiss brought by defendants Edwards and Hofmann be GRANTED, and that Noll's motion to dismiss be GRANTED in part and DENIED in part.

Factual Background

For purposes of the pending motions to dismiss, the

facts alleged in the complaint will be accepted as true.  On May 19, 2007, Officer Noll entered Chinnici's cell and dropped a pen.  Chinnici requested that Noll pick up the pen, but Noll failed to do so.  Approximately 15 minutes later, while Chinnici was playing cards, Noll asked him if he had the pen.  Chinnici informed him that it was still on the floor of his cell.  When Chinnici refused to retrieve the pen, Noll responded by marking Chinnici's arm with a different pen and stomping on his sandaled foot, ripping off the nail and causing the toe to bleed.  Noll subsequently recovered the pen and gave Chinnici a "Major Disciplinary Write Up."  (Paper 4 at 6).

A couple of days after the pen incident, Noll entered Chinnici's cell to perform an inspection.  Chinnici was sitting on his bunk with his shirt off.  Noll approached him and proceeded to rub and squeeze his breast, stating, "'Damn Chinnici, you better start working out, you're getting soft.'"  Id.  Chinnici asked Noll to leave the cell, and reports that the rubbing was "definitely in a sexual manner."  Id.

As a result of these incidents, Chinnici has allegedly suffered emotional trauma, including depression and anxiety.

He also claims that "[e]very time an officer gets loud towards me, I'm afraid he's going to assault me."  For relief, he seeks damages for physical and emotional injuries.  Chinnici brings his claims under the Eighth and Fourteenth Amendments, as well as the International Covenant on Civil and Political Rights ("ICCPR") and the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601(11).

<u>Discussion</u>

I.  <u>Motion to Dismiss Standard</u>

     The defendants have moved to dismiss the complaint.  On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor.  <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).  To survive dismissal, a complaint must plead enough facts to be plausible on its face.  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Cir. 2008) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)).

II.  <u>Edwards</u>

     Chinnici was placed at CCRC by the U.S. Marshals Service.  Because the Marshals were responsible for his detention, Chinnici claims that Marshal Edwards "became

3

responsible for the officers' [sic] actions/inactions and to keep me safe . . . ."  (Paper 4 at 7).  Edwards now argues that Chinnici has failed to bring a viable claim against him.

Edwards first submits that, as a federal official, he is not subject to liability under 42 U.S.C. § 1983.  Indeed, the Second Circuit "has long construed the phrase 'under color of state law' as used in . . . civil rights statutes, notably 42 U.S.C. § 1983, to apply only to state actors, not federal officials."  <u>Dotson v. Griesa</u>, 398 F.3d 156, 162 (2d Cir. 2005) (citing <u>Kingsley v. Bureau of Prisons</u>, 937 F.2d 26, 30 n. 4 (2d Cir. 1991)).  Accordingly, Section 1983 may not be used as a vehicle for bringing suit against the U.S. Marshal.

Because the complaint is brought *pro se*, Edwards appropriately allows for the possibility that the Court will construe it as brought pursuant to § 1983's federal counterpart, <u>Bivens v. Six Unknown Name Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  In response to this potential cause of action, Edwards argues that he is being sued solely in his official capacity, and that he protected by the United States' sovereign immunity.

4

An action against a federal agency or federal officers in their official capacities is essentially a suit against the United States.  Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).  Such suits are barred under the doctrine of sovereign immunity unless that immunity is waived.  Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994); Robinson, 21 F.3d at 510 (2d Cir. 1994).  Chinnici has not established that the federal government waived its sovereign immunity with respect to his constitutional claims.  See Drance v. Simpson Thacher & Bartlett, 1997 WL 442071, at *4 (S.D.N.Y. Aug. 5, 1997) ("It is well-established, however, that the United States has not waived its sovereign immunity for claims alleging constitutional violations.") (citing Meyer, 510 U.S. at 475-79).  Any such claims brought against Edwards in his official capacity should, therefore, be DISMISSED.

Although the complaint does not specify that Chinnici is bringing an individual capacity claim against Edwards, the Court should again construe the complaint liberally and address such a claim.  See, e.g., Goonewardena v. New York, 475 F. Supp. 2d 310, 320 (S.D.N.Y. 2007).  As noted above, Chinnici claims that Edwards was responsible for the conduct

of a Vermont DOC officer.  While <u>Bivens</u> permits suits for monetary damages against federal officials in their individual capacities, the plaintiff must claim that the defendant was personally involved in the alleged wrongdoing. <u>See</u> <u>Barbera v. Smith</u>, 836 F.2d 96, 99 (2d Cir. 1987), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Barbera v. Schlessinger</u>, 489 U.S. 1065 (1989); <u>Economou v. Butz</u>, 466 F. Supp. 1351, 1355 (S.D.N.Y. 1979) (dismissing § 1983 action against Secretary of Agriculture in part for failure to allege personal involvement in any alleged wrongdoing).  Here, Chinnici relies solely on respondeat superior, and alleges no actual involvement on Edwards' part.  Consequently, to the extent that Chinnici is bringing an individual capacity claim against Edwards under <u>Bivens</u>, that claim should be DISMISSED.  <u>See</u> <u>Black v. United States</u>, 534 F.2d 524, 528 (2d Cir. 1976) (holding that plaintiffs cannot rely on a respondeat superior theory of liability in actions against federal officials).

Edwards further argues that, to the extent the complaint alleges a tort claim, that claim is barred by sovereign immunity.  In order to bring a tort claim against a federal official, a plaintiff must follow the procedures

set forth in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80.  Those procedures include administrative exhaustion prior to filing suit.  See 28 U.S.C. § 2675(a); Celestine v. Mount Vernon Neighborhood Health Center, 403 F.3d 76, 82 (2d Cir. 2005).  It is Chinnici's burden to show that he has complied with the FTCA, and he has made no such showing.  See McClenton v. Menifee, 2006 WL 2474872, at *16 (S.D.N.Y. Aug. 22, 2006).  Furthermore, because Edwards was acting within the scope of his employment when he placed Chinnici at CCRC, the proper defendant is the United States. 28 U.S.C. § 2679(d).[1]  Therefore, to the extent that Chinnici is bringing a tort claim against Edwards, that claim should be DISMISSED without prejudice.

Finally, Chinnici's claims under the ICCPR and PREA are without legal merit.  The Second Circuit has held that "the provisions of the ICCPR do not create a private right of action or separate form of relief enforceable in United States courts."  Guaylupo-Moya v. Gonzalez, 423 F.3d 121, 137 (2d Cir. 2005).  Similarly, the PREA confers no private right of action.  The PREA is intended to address the problem of rape in prison, authorizes grant money, and

---

[1]  Edwards has provided the certification required under § 2679(d)(1).  (Paper 19-2).

7

creates a commission to study the issue.  42 U.S.C. § 15601 et seq.  The statute does not grant prisoners any specific rights.  In the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision. See Gonzaga University v. Doe, 563 U.S. 273, 279-80 (2002). Accordingly, neither the ICCPR nor the PREA confer a private right to sue, and Chinnici's claims under these statutes should be DISMISSED.

In sum, Chinnici has failed to state a viable claim against defendant Edwards.  I therefore recommend that the Court GRANT Edwards' motion to dismiss, and that all claims against him be DISMISSED.

II.  Hofmann

Commissioner Hofmann has moved to dismiss on grounds similar to those advanced by Edwards, including sovereign immunity and lack of personal involvement.  Hofmann first argues that any claims against him in his official capacity are barred by the State of Vermont's sovereign immunity under the Eleventh Amendment.  The Eleventh Amendment prohibits suits in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to

suit by the state or a valid abrogation of constitutional immunity by Congress.  See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  The Eleventh Amendment also bars claims against state employees sued in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress.  Indeed, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment.  See 12 V.S.A. § 5601(g). Accordingly, any claims against Hofmann in his official capacity should be DISMISSED.

Hofmann next contends that he is entitled to dismissal in his individual capacity because the complaint does not allege his personal involvement in the alleged wrongdoing. Chinnici claims that Hofmann is liable solely because of his role as Commissioner.  The Second Circuit has made clear that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on respondeat superior.

`[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior.' <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003) (citing <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989)).  To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations.  <u>See</u> <u>Green v. Bauvi</u>, 46 F.3d 189, 194 (2d Cir. 1995).  By the same token, however, mere `linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.  <u>Ayers v. Coughlin</u>, 780 F.2d 205, 210 (2d Cir. 1985); <u>see also</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." <u>Hernandez</u>, 341 F.3d at 145; <u>see also</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

<u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003).

Chinnici does not allege any direct participation by Hofmann.  Nor does he claim that Hofmann failed to provide a remedy, or that Noll was following a sanctioned policy or

custom.  Further, the complaint makes no allegation of grossly negligent supervision.  Chinnici has therefore failed to raise a plausible individual capacity claim against Hofmann under § 1983, and any such claim brought against Hofmann should be DISMISSED.  For reasons set forth above, claims against Hofmann under the ICCPR and PREA should also be DISMISSED, and his motion to dismiss should be GRANTED.

III.  <u>Noll</u>

Like the other defendants, Noll seeks to dismiss all claims brought against him in his official and individual capacities.  As an employee of the State of Vermont, the Eleventh Amendment applies to Noll just as it did to defendant Hofmann.  All claims brought against Noll in his official capacity should, therefore, be DISMISSED.

Chinnici's claims against Noll in his individual capacity, however, do not receive the protections available to Hofmann and Edwards, as Noll was directly involved in the allegedly wrongful conduct.  Consequently, Noll asserts a different set of defenses, namely, failure to exhaust administrative remedies and qualified immunity.

With respect to exhaustion, the Prison Litigation

11

Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Second Circuit has recognized three exceptions to the exhaustion requirement:

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

United States v. Ruggiero, 467 F.3d 170, 175 (2d Cir. 2006). As for pleading requirements, "failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 127 S. Ct. 910, 921 (2007).

Here, the allegations in Chinnici's complaint, taken as true, do not establish that he failed to exhaust his administrative remedies.  The complaint first states that Chinnici filed grievance forms 1 and 2.  In response to the first, Noll apparently stated that "he was only joking." Chinnici reports that his form 2 filing received no response.

Later in the complaint, Chinnici states that he notified Rick Byrne, a Supervisor at CCRC, personally about both the physical and sexual assaults.  Byrne informed Chinnici that he was already investigating the physical assault, and that Chinnici "didn't have to use every step of the grievance process because there was sexual misconduct." (Paper 4 at 5).  Chinnici also reports having met with Peter Canales, Chief of Special Investigations Unit in the Agency of Human Services, and Jerry Day from that same office.

Given these allegations, it appears that Chinnici attempted to exhaust the administrative process.  The fact that he received no response to his form 2 may entitle him to proceed, while the information he allegedly received from prison personnel about the process, or lack thereof, for grieving sexual misconduct may entitle him to argue either

13

estoppel or "special circumstances," as defined by the Second Circuit.

Noll contends that Chinnici's claims were investigated, that a recommendation was made, and that the recommendation was sustained by the Superintendent/District Manager.  He further submits that the first grievance was not appealed, and that a second and identical grievance was not pursued. Not only do these facts go beyond the complaint, they lack any record or evidentiary support.  If Noll wishes to submit additional evidence on the issue of exhaustion, he should do so by submitting the appropriate records and affidavits, and his filing should be presented in a motion for summary judgment.  See McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) ("if, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle"); Scott v. Gardner, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003).  He may also wish to address any applicable exceptions to the exhaustion requirement.  Based upon the current record, I recommend that the Court decline to dismiss the claims against Noll on the basis of lack of administrative exhaustion.

14

Noll further argues that he is entitled to qualified immunity.  Specifically, he contends that having a foot stepped on and an arm marked by a pen do not rise to the level of constitutional deprivations.  He does not address the allegation of sexual misconduct.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted)  As the Second Circuit has summarized:

> A threshold question for triggering the qualified immunity doctrine is whether an official's conduct violated a constitutional right . . . .  If so, we then must decide whether qualified immunity attaches.  Qualified immunity is warranted if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions.

Connecticut v. Crotty, 346 F.3d 84, 101-02 (2d Cir. 2003) (citations and quotations omitted).

An inquiry into whether the law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier v. Katz,

15

533 U.S. 194, 201 (2001). However, "[t]his is not to say
that an official action is protected by qualified immunity
unless the very action in question has previously been held
unlawful, but it is to say that in the light of pre-existing
law the unlawfulness must be apparent." Hope v. Pelzer, 536
U.S. 730, 739 (2002) (internal citations and quotation marks
omitted).

It is well established that the "unncessary and wanton
infliction of pain . . . constitutes cruel and unusual
punishment forbidden by the Eighth Amendment." Whitley v.
Albers, 475 U.S. 312, 318 (1986). The Supreme Court has
also held that "[a]mong 'unnecessary and wanton' inflictions
of pain are those that are 'totally without penological
justification.'" Rhodes v. Chapman, 452 U.S. 337, 346
(1981). Similarly, the Court has held that prison officers
violate the Eighth Amendment when they apply force
maliciously and sadistically to cause harm, rather than in a
good faith effort to restore discipline. Hudson v.
McMillian, 503 U.S. 1, 6-7 (1992).

Here, Chinnici claims that Noll stomped on his bare toe
without penological justification, causing his toenail to
tear off and his toe to bleed. Noll's conduct was allegedly

16

in retaliation for Chinnici's refusal to retrieve a pen. Accepting these claims at true, Chinnici has a plausible argument that Noll violated clearly established federal law, and that any belief that his actions were lawful would not have been reasonable.  I therefore recommend that Noll's motion to dismiss based upon qualified immunity be DENIED.

As discussed above, any claims brought under the ICCPR and PREA should be DISMISSED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the motions to dismiss filed by defendants Edwards (Paper 19) and Hofmann (Paper 17) be GRANTED.  I further recommend that defendant Noll's motion to dismiss (Paper 21) be GRANTED in part and DENIED in part.  Noll's motion should be GRANTED with respect to all claims brought against him in his official capacity, and as to any claims brought pursuant to the PREA and ICCPR.  The motion should be otherwise DENIED.

Dated at Burlington, in the District of Vermont, this 23<u>rd</u> day of July, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

17

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).